**UNITED STATES of America**

v.

**Bernard Leon GOLDENBERG, Defendant.**

**66 Cr. 790.**

United States District Court,
S. D. New York.

Feb. 17, 1971.

Whitney North Seymour, Jr., U. S. Atty., for the S. D. of N. Y.; J. A. Sale, Asst. U. S. Atty., of counsel, for U. S. A.

Thomas H. Baer, New York City, for defendant.

## MEMORANDUM

FRANKEL, District Judge.

The defendant was indicted in 1966 on three counts of perjury—one relating to testimony before the Securities and Exchange Commission and the two others to testimony before a grand jury sitting in this court. For reasons that need not be explored at this time, there has been some considerable delay in moving the case on for trial. In the autumn of last year, when this case and others were assigned to individual judges, the extended period of inaction was brought gradually to an end. Upon motion of a codefendant, and with the government's consent, the trial of the codefendant was severed. Then, after the court had proceeded to set a trial date for the beginning of this year, it appeared that this defendant and his counsel were having some difficulty communicating with each other. More specifically, the defendant claims to understand his lawyer perfectly well, but the lawyer feels there are impediments to the meaningful and effective interchange necessary to defendant's assisting in his own defense. As this asserted problem developed, the court concluded that it should inquire formally into the defendant's competency to stand trial.

The court received written reports from two psychiatrists—one chosen by the defendant, another appointed by the court on the government's motion. Since the conclusions in these written reports were conflicting, the court ordered an evidentiary hearing.

Upon the basis of all the materials now in the record, the court finds that defendant is entirely and unquestionably competent to stand trial. While the government is not required, of course, to establish competency in this respect beyond a reasonable doubt, cf. United States v. Marbley, 410 F.2d 294 (5th Cir. 1969), the evidence in the record actually meets this standard.

The defendant is a college-educated man of 43. He is literate, articulate and thoroughly lucid. Nobody suggests anything that might be characterized in any school of psychiatry as a "psychosis." Moreover, all (including both psychiatrists) are agreed that he is fully capable of understanding the charges

against him. His memory is unimpaired. His social judgments are adequate and appropriate. There is no evidence of psychological disorganization. His reality-testing is intact, and there is "no impairment of his cognitive capacity * * *." The quotation is from the letter of Dr. Gurston D. Goldin, defendant's psychiatrist, whose conclusion is that defendant is not competent to stand trial.

Notwithstanding this array of favorable factors, the issue before the court has centered upon the question whether defendant's adequate "cognitive capacity" is so affected by unconscious factors as to impair substantially his ability to assist in his own defense. Both psychiatrists agree that there may be such unconscious or emotional impediments to the effective employment of what would otherwise be ample cognitive capacity. And the court, in this age when at least rudimentary sophistication in the concepts of psychiatry has become essential to the administration of the criminal law, has no doubt that such conditions may and do exist. The issue, then, is whether this is the condition of the defendant before us.

Exploring this issue, the defendant's psychiatrist, Dr. Goldin, saw the defendant twice, for fifty minutes each time. (Dr. Portnow, the psychiatrist taking an opposite view, likewise spent two consultation periods with the defendant, one for about one hour and thirty-five minutes, the second, for one hour and twenty minutes.) In these visits, during which he obtained scarcely any biographical data from the defendant, Dr. Goldin concluded that the defendant suffers from a personality maladjustment which disturbs his ability to maintain an effective working relationship with anyone upon whom he perceives himself as dependent. The dynamics of the defendant's character are such, according to Dr. Goldin, that defendant sees himself threatened when he is in a position he experiences as compliant or submissive. The defenses defendant has developed, Dr. Goldin concludes, are such that they would tend to subvert or undermine relationships where he feels such a sense of dependence or compliance or passivity. The results of these defensive mechanisms would lead the defendant, Dr. Goldin says, to be dilatory, evasive and tangential in speaking to a lawyer, his unconscious objective being to "frustrate and provoke" the attorney attempting to assist him.

As these views are summarized in Dr. Goldin's letter to the court, they are as follows:

"Mr. Goldenberg suffers from an emotional difficulty which disturbs his ability to achieve and sustain a successful and effective interpersonal relationship with his attorney. He is psychologically threatened by any situation which represents symbolically the reenactment of the early child-parent relationship, in which he experiences himself as a weak, helpless and dependent person. He is characterologically unable to trust the expert judgment and accept the authoritative advice of any authority figure and is likely to experience rage and hostility when placed in a position that he regards as a dependent, compliant or submissive role. The client-lawyer relationship jeopardizes the characerological defenses against his own passivity which he cannot accept and which arouses anxiety. Characteristically, he is unable to accept a dependent position which intensifies his feelings of helplessness, unworthiness and inadequacy, and he has a tendency to bolster his self-esteem by identifying with authority figures and to enjoy pride in his independence and resourcefulness. When denied an opportunity to use such psychological defensive maneuvers, he tends to behave in a defiant way that is provocative and frustrating and invites retaliation which serves as a justification for his intensely hostile feelings.

"Psychiatric examination of Mr. Goldenberg produced clinical findings of characterological difficulties which would impair his ability to establish

an effective and trusting relationship with his attorney in order to assist in his own defense. Mr. Goldenberg suffers from an emotional maladjustment that constitutes a long-standing characterological (personality) disorder without clinical findings of psychological disorganization."

While I do not question the earnestness and sincerity of the views thus expressed, I find them wholly overwhelmed by the contrary views, and the support therefor, given by Dr. Stanley L. Portnow. I note in this connection that Dr. Goldin's conclusion does not include in its foundation any suggestion that the defendant's "characterological defenses" have rendered him incompetent, or seriously impaired him, in any relationship other than his current ones with his defense counsel. It appears, in fact, that defendant has worked satisfactorily in business relationships with lawyers upon whom he has been dependent for advice and guidance. Dr. Goldin tells nothing (and appears to know substantially nothing) about the defendant's relationships with his parents or other authority figures in the course of 43 years of life during which he has evidently been intact and effectively functioning at all times. I note, furthermore, that the same defenses, even according to Dr. Goldin, would presumably operate in the doctor-patient relationship, but that they did not impair the ability of either Dr. Goldin or Dr. Portnow to deal effectively with this defendant in that relationship. (This is not to identify the doctor-patient with the lawyer-client relationship; it is merely to note a factor of some pertinence along with all the rest.) I am led, in sum, by the evidence to conclude that Dr. Goldin's analysis of the defendant's relationship with his lawyer is conjectural and unpersuasive.

On the other hand, I find wholly persuasive the conclusions of Dr. Portnow that this defendant can control his grandiosity and his tendency to avoid submissiveness quite effectively when he chooses to do so and deems it in his interest to do so. Like Dr. Goldin, and like defense counsel, Dr. Portnow observed that this defendant does not like to be interrupted in the course of explanation and prefers, whenever possible, to be in command of anyone with whom he has a relationship. Nevertheless, all the evidence indicates that the defendant can control this urge and cooperate intelligently when he determines to do so.

I am led to observe that we might enjoy more complacency than we do about the functioning of our criminal process if we consistently had defendants as competent to assist at their defense as the defendant in this case.

Having concluded that the defendant is entirely competent to stand trial, the court will convene a pretrial conference within the next week in order to set a firm trial date and conclude any other preliminaries. In the meantime, an observation made at the hearing should be repeated and underscored: it may be that there are difficulties of one sort or another in the relationship of this particular defendant with his counsel. Indeed, the "characterological defenses" about which Dr. Goldin spoke in his letter and his testimony are in their specific manifestations reminiscent of the behavior about which lawyers frequently complain in the general class of persons known as "clients." If it is neurotic to be tangential and evasive with a lawyer, the symptom is thought by many in the profession (and by others) to be widespread. See Alexander and Staub, The Criminal, The Judge, and the Public 135 (rev. ed. 1956). However that may be, the court fully recognizes that some lawyer-client relationships prove unworkable, as is true of relationships in many other spheres. It becomes the obligation of this defendant in his own behalf, and of counsel as an officer of the court and as the defendant's trusted advisor, to focus intensely now on whether they are able to work together. The trial date will be set for some two or three months hence, so that if any substitution of counsel is required, no postponement will be necessary or justifiable in the absence of an utter catastrophe of one

kind or another. It is expected that all concerned will be guided by these thoughts.

To conclude, the court finds defendant competent to stand trial and directs that the case proceed accordingly.

So ordered.